NOT FOR PUBLICATION (Doc. No. 72)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ROCKWELL AUTOMATION, INC., : | |
| : | |
| Plaintiff, : | Civil No. 15-5246 (RBK/JS) |
| : | |
| v. : | **Opinion** |
| : | |
| RADWELL INTERNATIONAL, INC. : | |
| : | |
| Defendant. : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on Plaintiff Rockwell Automation, Inc.'s ("Plaintiff" or "Rockwell") Complaint against Defendant Radwell International, Inc. ("Defendant" or "Radwell") asserting violations of the Lanham Act, 15 U.S.C. § 1051 et seq., statutory unfair competition, N.J. Stat. Ann. § 56:4–1 et seq., and common law unfair competition. Currently before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 72). For the reasons expressed below, Defendant's Motion to Dismiss is **GRANTED IN PART**.

I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Rockwell is the world's largest company dedicated to industrial automation, employing over 22,000 people and serving customers in more than 80 countries. Compl. ¶ 10. It manufactures and sells drivers and motors, programmable automation controllers, sensors, human-machine interfaces, power control products and power supplies, safety control devices, and post-sale maintenance and support devices. *Id.* ¶ 12. These products are sold to customers by

1

Rockwell or through authorized distributors. *Id.* ¶ 14. Rockwell owns twelve trademarks at issue in this case, which pertain to its Allen-Bradley, Rockwell Automation, or other products. *Id.* ¶ 16. The twelve trademarks are all registered with the Principal Register of the United States Patent and Trademark Office ("USPTO"). *Id.*

Radwell is a business that sells equipment, including industrial automation products, on its website www.plccenter.com and eBay, an online auction website. *Id.* ¶ 17. Among the products Radwell sells are Rockwell products. *Id.* ¶¶ 21–22. These products contain Rockwell's trademarks. *Id.* Radwell is not an authorized distributor of Rockwell's, but allegedly procures Rockwell products using a "fake company" it set up. *Id.* ¶ 24. The fake company supposedly purchases Rockwell products for a lower price from an authorized distributor in China and ships the products to the United States, upon which Radwell resells the product for profit. *Id.* ¶¶ 29–32. This model allows Radwell to offer Rockwell products at prices lower than that offered by Rockwell and its authorized distributors, thus undercutting the profits of Rockwell and its authorized distributors. *Id.* ¶ 26.

According to the Complaint, Radwell engages in various behaviors that violate trademark and unfair competition laws. Radwell allegedly sells items that bear Rockwell's trademarks but are not genuine Rockwell products. The products offered by Radwell supposedly differ from genuine Rockwell products in that they: have not proceed through the same quality control procedures; have quality control problems; have broken factory seals; do not come with Rockwell customer support, product safety notices, or recall notices; do not come with licensees to use the software or firmware; do not come with indemnification against intellectual property infringement claims against the software or firmware; and do not come with Rockwell's manufacturer's warranty. *Id.* ¶¶ 41–144. Radwell also allegedly makes false or misleading

statements in advertising the Rockwell items it sells on its own website and the eBay website. Among the false representations alleged are statements that the products contain a factory warranty, two year warranty, or Radwell-equivalent warranty; are sealed, new, unused, or unopened; resemble photos displayed alongside the product listings; are available within a certain time and at certain prices; are ordered from the manufacturer; and are the same as genuine Rockwell products. *Id.* ¶¶ 148–88. Rockwell further alleges that Radwell made false or misleading statements that confused consumers as to Rockwell's sponsorship of, affiliation with, or endorsement of Radwell: Radwell allegedly displays Rockwell's logo in product listings; states that the Rockwell items it sells are delivered by Rockwell, factory stock, or ordered from the manufacturer; and Radwell communicates directly with "the factory" in fulfilling customers' orders. *Id.* ¶¶ 195–210. As a result of the above, Rockwell pleads that it has suffered lost sales and harm to its goodwill and reputation. *Id.* ¶¶ 218–26.

On July 6, 2015, Rockwell filed a Complaint asserting claims for trademark infringement under 15 U.S.C. § 1114 (Count I); false advertising under 15 U.S.C. § 1125(a)(1)(B) (Count II); false designation of origin under 15 U.S.C. § 1125(a)(1)(A) (Count III); trademark dilution under 15 U.S.C. § 1125(c) (Count IV); statutory unfair competition under N.J. Stat. Ann. § 56:4–1 et seq. (Count V); and common law unfair competition (Count VI) (Doc. No. 1). *Id.* ¶¶ 227–73. On February 16, 2016, Rockwell filed a First Amended Complaint (Doc. No. 65). On March 17, 2016, Radwell brought the present Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 72).

**II.     STANDARD OF REVIEW**

Where a defendant's motion is one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) and alleges that a plaintiff has failed to state a claim, it is treated

3

under the same standards as a Rule 12(b)(6) motion. *See Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991) (citations omitted). Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether the non-moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). While "detailed factual allegations" are not necessary, a "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

In making this determination, the court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice.

*Id.* at 131 (quoting *Iqbal*, 556 U.S. at 678). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive a motion to dismiss where a court can only infer that a claim is merely possible rather than plausible. *Id.*

### III. DISCUSSION

Claims are generally subject to the pleading requirements of Federal Rule of Civil Procedure 8(a). Allegations of fraud or mistake, however, must be pleaded with particularity pursuant to Federal Rule of Civil Procedure 9(b). *See Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). The plaintiff can satisfy the Rule 9(b) requirement by: (1) pleading the date, place, or time of the fraud; or (2) otherwise injecting precision and some measure of substantiation in the allegations of fraud. *Id.*

The Third Circuit has never required a trademark claim under the Lanham Act to meet the higher Rule 9(b) standard, and neither have other courts in this District.[1] *See John Wiley & Sons, Inc. v. Rivadeneyra*, No. Civ. 13-1085 (FSH)(JBC), 2013 WL 6816369, at *2 (D.N.J. Dec. 20, 2013). Some courts, however, have applied an intermediate standard to false advertising claims under the Lanham Act. *Wellness Pub. v. Barefoot*, No. Civ. 02-3773 (JAP), 2008 WL 108889, at *14–15 (D.N.J. Jan. 9, 2008). The intermediate standard purportedly falls between that required by Rule 8 and Rule 9, but this court notes that the intermediate standard was formulated prior to *Iqbal* and *Twombly* which raised the pleading requirement beyond that of simple notice. *See Mycone Dental Supply Co. v. Creative Nail Design, Inc.*, No. Civ. 11-4380

---

[1] Excepted is where a party alleges the trademark at issue was falsely or fraudulently procured. *Kelly v. Estate of Arnone* ex rel. *Ahern*, No. Civ. 08-6046 (SDW), 2009 WL 2392108, at *5 (D.N.J. Aug. 3, 2009). Such a situation is not present here.

(JBS/KMW), 2012 WL 3599368, at *4–5 (D.N.J. Aug. 17, 2012). Provided that the current Rule 8 standard already demands greater precision relative to the previous Rule 8 standard, the Court finds no discernible difference between the intermediate standard required for false advertising claims and that under Rule 8. The Court will apply the Rule 8 pleading standard to Plaintiff's trademark claims.

### A. Count I — Trademark Infringement

To establish a claim for relief under § 32(1) of the Trademark Act, 15 U.S.C. § 1114, a plaintiff must show that:

> (1) the marks are valid and legally protectable; (2) the marks are owned by the plaintiff; and (3) the defendant's use of the marks to identify goods or services is likely to create confusion concerning the origin of the good or services.

*Opticians Ass'n of Am. v. Independent Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990). Under the statute, a plaintiff may establish the first two elements by alleging that the mark is registered upon the Principal Register of the USPTO. *CSC Holdings, LLC v. Optimum Networks, Inc.*, 731 F. Supp. 2d 400, 406 (D.N.J. 2010) (citing 15 U.S.C. §§ 1057(b), 1115(a)–(b)); *Commerce Nat'l Ins. Serv., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000)). Likelihood of confusion exists where "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 292 (3d Cir. 1991) (quoting *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1229 (3d Cir. 1978)). Where the alleged infringer's and trademark owner's products contain identical marks, consumers are likely to be confused where the products are materially different. *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 303 (3d Cir. 1998). Material differences are "[a]ny differences that are likely to damage the goodwill developed by the trademark owner."

6

*Id.* at 304. In *Iberia Foods Corp.*, the Third Circuit found that use of a different post-manufacture quality control and inspection procedure by the alleged infringer may constitute a material difference, if the difference must likely result in "differences between the products such that consumer confusion regarding the sponsorship of the products could injure the trademark owner's goodwill." *Id.*

Here, Plaintiff pleads eleven material differences between genuine products it manufactures and Defendant's unauthorized products. Compl. ¶¶ 41–144. Included in these allegations are purported differences in the quality control procedures used by Defendant to handle, package, preserve, ship, purge, and/or store products. *Id.* ¶ 49. For example, Plaintiff follows particular procedures regarding moisture-controlled packaging, protective packaging, electrostatic discharge packaging, the number of items packaged together, and purging of items with quality problems. *Id.* ¶¶ 54–57, 61. These practices allegedly affect the safety and quality of the products made by Plaintiff. *Id.* ¶ 52. Defendant responds by noting that Plaintiff never alleges that it monitors or knows whether products sold by authorized distributors comply with the aforementioned quality control procedures.[2]

The Court finds that Plaintiff provides enough factual material to state a claim for relief. The Complaint contains detailed allegations regarding a number of different quality control measures used by Plaintiff, and where Plaintiff pleads facts that rise above conclusory statements, the Court must assume them to be true. The Court notes that Plaintiff must show that the differences it alleges are sufficient to injure its goodwill in order to prove the material

---

[2] Defendant also argues that any difference in the quality control procedures applied during the manufacturing process cannot constitute a material difference because such procedures have been applied by the time Defendant acquires a Rockwell product and resells it. That may be true, but the Court finds that argument unavailing because the Third Circuit has found differences in the post-manufacture quality control process alone to constitute material differences. *Iberia Foods Corp.*, 150 F.3d at 304.

difference element, and Defendant attempts to argue that any differences in quality control procedures do not injure Plaintiff's goodwill because authorized distributors may not actually implement those procedures. Such an inquiry, however, is fact-laden and Defendant does not show that Plaintiff's trademark infringement claim fails as a matter of law. As such, the Court finds that Plaintiff has shown the requisite elements of the trademark infringement claim.[3]

Defendant argues that Plaintiff's trademark infringement claim is nonetheless barred by the first sale or exhaustion doctrine.[4] The first sale doctrine in the context of trademark law states that a trademark owner's act of placing a product into the stream of commerce extinguishes her rights to control who buys, sells, and uses the product in its authorized form. *Iberia Foods Corp.*, 150 F.3d at 301. The Third Circuit has not addressed whether the first sale doctrine applies where the alleged infringer sells goods that are materially different from those sold by the trademark owner. Other circuits, however, have found that the first sale doctrine is not implicated where the trademark owner has demonstrated a material difference between its products and the ones of the alleged infringer. *See, e.g.*, *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1072 (10th Cir. 2009); *Brilliance Audio, Inc. v. Haights Cross Commc'ns, Inc.*, 474 F.3d 365, 370 (6th Cir. 2007). This Court will follow their

---

[3] Plaintiff pleads ten other types of material differences between its products and the products sold by Defendant. The Court refrains from analyzing the other allegedly material differences at this time, as the *Iberia Foods Corp.* court stated that quality control measures alone can create differences that are material even absent proof of actual differences in quality between inspected and uninspected goods. 150 F.3d at 304.

[4] Defendant contends that the first sale doctrine also bars Counts II through VI. The Court is aware of no jurisprudence in this Circuit that has found the first sale doctrine to apply in false advertising or trademark dilution claims, and Defendant cites none. As for Plaintiff's false designation of origin and unfair competition claims based on sponsorship confusion, they necessarily require Plaintiff to show that Defendant took "some action that causes confusion beyond displaying and selling the product." *7-Eleven, Inc. v. Maia Inv. Co.*, No. Civ. 14-8006 (JBS/JS), 2015 WL 1802512, at *8 (D.N.J. Apr. 17, 2015). Because the first sale doctrine only protects Defendant's rights to buy, sell, and use the product, the first sale doctrine thus cannot protect against designation of origin and unfair competition claims sounding in sponsorship confusion.

lead. Because Plaintiff here has shown a material difference between the goods it offers and those that Defendant offers, the first sale doctrine will not bar Plaintiff's trademark infringement claim. The Court accordingly denies Defendant's Motion to Dismiss as to Count I.

### B.  Count II — False Advertising

To establish a false advertising claim under § 43(a) of the Lanham Act, the plaintiff must show: "(1) the defendant made false or misleading statements about the plaintiff's product; (2) there is actual deception or a tendency to deceive a substantial portion of the intended audience; (3) the deception is material in that it is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury to the plaintiff, e.g., declining sales and loss of good will." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 171 (3d Cir. 2001) (citations omitted); *see also* 15 U.S.C. § 1125(a)(1)(B). The plaintiff need not prove actual consumer deception if the advertisement is literally false. *Id.*

Defendant here asserts that the Complaint fails to plead a plausible claim of false advertising. The Court's review of the Complaint finds forty paragraphs detailing false statements allegedly made by Defendant, including numerous quotations from Defendant's website and eBay listings. Compl. ¶¶ 148–88. Plaintiff also alleges that some of these statements, for instance those representing that the product comes with a factory warranty, are literally false. *Id.* ¶¶ 148–152. Such facts are enough to satisfy the Rule 12(b)(6) standard as to elements (1) and (2). Plaintiff further pleads that Defendant's statements are likely to influence consumers to purchase products from Defendant, Defendant sold goods throughout the United States, and Defendant's conduct causes injury by confusing and deceiving the public regarding the nature, quality, and characteristics of Plaintiff's products. *Id.* ¶¶ 17, 237–38. Thus, Plaintiff has also met

its burden as to elements (3) to (5). Given that Plaintiff has adequately pleaded the requisite elements of a false advertising claim, Defendant's Motion to Dismiss Count II is denied.

### C. Count III — False Designation of Origin

A plaintiff can also bring a trademark infringement claim under § 43(a) of the Lanham Act, and it is subject to identical standards as a trademark infringement claim brought under § 32(1). *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000); *see also* 15 U.S.C. § 1125(a)(1)(A). Thus, the Court herein incorporates its analysis under Count I and finds that Plaintiff states a claim for relief of trademark infringement under § 43(a).

Plaintiff also brings a false designation of origin claim based on a sponsorship confusion theory. A sponsorship theory alleges not that the consumer will be confused regarding the origin of a trademarked product, but that the alleged infringer is trading on a false impression that it has a relationship with the trademark owner. *See Food Scis. Corp. v. Nagler*, No. Civ. 09-1798 (JBS/KMW), 2010 WL 4226531, at *3 (D.N.J. Oct. 20, 2010). Demonstrating the likelihood of confusion for sponsorship confusion differs from that of infringing marks in two ways: (1) the plaintiff must demonstrate the defendant took "some action that causes confusion beyond displaying and selling the product" and (2) the Court applies only some of the ordinary factors for assessing confusion as listed in *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 912 (Fed. Cir. 1984). *Food Scis. Corp.*, 2010 WL 4226531, at *3–5. The *Bandag* factors are "similarity between the practices at issue and those of authorized users; the class of goods or services in question; the marketing channels involved; evidence of actual confusion; and evidence of the intention of the defendant in engaging in the activity of which plaintiff complains." *Bandag*, 750 F.2d at 912.

Plaintiff here alleges that Defendant took some action that caused confusion beyond displaying and selling Plaintiff's products in that it displays Allen-Bradley's logo in pictures that appear in listings of products not manufactured by Plaintiff; displays the logo alongside Defendant's logo; suggests Plaintiff is involved in fulfilling orders sent to Defendant; suggests Defendant communicates with Plaintiff regarding orders; and suggests Plaintiff provides a warranty to products sold by Defendant. Compl. ¶¶ 195–210. As for the *Bandag* factors, Plaintiff pleads that Defendant's statements affiliating itself with Plaintiff are similar to the practices of an authorized seller; Plaintiff's goods and those sold by Defendant are in the same class; and Defendant's statements suggesting an affiliation with Plaintiff evince an intent to deceive. Pl.'s Opp'n Br. 23. These allegations contain much factual material and are sufficient to support a plausible claim of sponsorship confusion. The Court accordingly denies Defendant's Motion to Dismiss Count III.

### D.  Count IV — Trademark Dilution

To state a claim for trademark dilution, a party must show: (1) the plaintiff is the owner of a mark that qualifies as a "famous" mark, (2) the defendant is making commercial use of the mark in interstate commerce, (3) the defendant's use began after the mark became famous, and (4) the defendant's use causes dilution by lessening the capacity of the mark to identify and distinguish goods or services. *Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C.*, 212 F.3d 157, 163 (3d Cir. 2000); *see also* 15 U.S.C. § 1125(c). Defendant disputes only the first element. A mark is famous if "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). This requirement "is a rigorous standard, as it extends protection only to highly distinctive marks that are well-known throughout the country." *Green v. Fornario*, 486 F.3d 100,

11

105 (3d Cir. 2007) (citing *TCPIP Holding Co., Inc. v. Haar Commc'ns, Inc.*, 244 F.3d 88, 99 (2d Cir. 2001)). Indeed, the Trademark Dilution Revision Act ("TDRA") amended the Trademark Act to include the requirement that a famous mark have wide recognition by the general consuming public. Trademark Dilution Revision Act of 2006, Pub. L. No. 109-312, 120 Stat. 1730 (codified as amended at 15 U.S.C. § 1125 (2006)).

Plaintiff argues that its trademarks, which are those for its Allen-Bradley, Rockwell Automation, and other products, are famous because the Allen-Bradley marks are "rooted in history starting more than 100 years ago," the Rockwell Automation marks are "rooted in history dating back to the early- to mid-20th century," Allen-Bradley was valued at over $1.6 billion as of 1985, and Rockwell Automation is the world's largest company dedicated to industrial automation and information. Compl. ¶¶ 10, 249–50. Although these facts may support a contention that Plaintiff's marks are well-known in the sector of industrial automation and information, they do not show that the marks are widely recognized by the general consuming public throughout the country, as required by the TDRA. Other courts in this District have held that mere showings that a mark is known by the group of relevant consumers or a subregion of the United States do not suffice to demonstrate a mark is famous. *See Vista India v. Raaga, LLC*, 501 F. Supp. 2d 605, 624 (D.N.J. 2007); *Food King, Inc. v. Norkus Enters., Inc.*, No. Civ. 04-1500 (MLC), 2008 WL 3843719, at *13 n.10 (D.N.J. Aug. 15, 2008). Because Plaintiff fails to plead facts supporting wide recognition of its marks by the general consuming public, it fails to state a claim for trademark dilution. However, the Court will allow Plaintiff an opportunity to amend the claim as there is some possibility it could successfully amend to comply with Rule 12(b)(6). The Court accordingly dismisses Count IV without prejudice.

### E.  Count V — Statutory Unfair Competition, Count VI — Common Law Unfair Competition

"New Jersey has codified the common law authority of unfair competition at N.J.S.A. 56:4–1." *Nat'l Football League Properties, Inc. v. New Jersey Giants, Inc.*, 637 F. Supp. 507, 519 (D.N.J. 1986). In New Jersey, "except for the interstate commerce requirement, the elements of the unfair competition torts proscribed by New Jersey law and by section 43(a) of the Lanham Act are the same." *SK & F, Co. v. Premo Pharm. Labs., Inc.*, 625 F.2d 1055, 1066 (3d Cir. 1980). Because the claims brought under § 43(a), Counts II and III, state plausible claims for relief under § 43(a),[5] the Court finds that Plaintiff's unfair competition claims also survive the Motion to Dismiss.

### IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED IN PART**. Count IV is **DISMISSED WITHOUT PREJUDICE**.

Dated:   11/28/2016                                                  s/ Robert B. Kugler

                                                                                 ROBERT B. KUGLER

                                                                                 United State District Judge

---

[5] The Third Circuit has not clarified whether an unfair competition claim equates to a claim for fraud such that Rule 9(b) applies. *See H.H. Fluorescent Parts, Inc. v. DM Tech. & Energy, Inc.*, No. 04-CV-1997, 2005 WL 2972986, at *4–5 (E.D. Pa. Nov. 3, 2005). The Court, however, need not resolve the question because the Complaint as currently pleaded meets the higher Rule 9(b) standard. To support the claims under § 43(a), the Complaint sets forth numerous examples of specific statements and conduct by Defendant which span more than ten pages and which the Court details in its discussions of Plaintiff's false advertising and false designation of origin claims. The Court thus finds that Plaintiff has pleaded the unfair competition claims with sufficient particularity to give notice of the precise misconduct with which it charges Defendant.