IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ROCKWELL AUTOMATION, INC.<br><br>                Plaintiff,<br>    v.<br><br>RADWELL INTERNATIONAL, INC., et al.<br><br>                Defendant. | Civil No. 15-5246(RBK/JS) |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This Opinion and Order addresses the parties' dispute regarding plaintiff's privilege designations.[1] The Court received plaintiff's March 14, 2019 letter brief ("LB"), defendant's March 28, 2019 response, and heard oral argument. Given the substantial number of plaintiff's privilege designations, and the impracticability of reviewing all of plaintiff's documents <u>in camera</u>, the Court directed defendant to designate fifty (50) representative documents to specifically challenge.[2] The Court reviewed the designated documents <u>in camera</u>. For the reasons to be discussed, the Court sustains and overrules plaintiff's privilege assertions. As to the privilege assertions that are sustained, the Court will not direct plaintiff to produce any

---

[1] As used herein, the term privilege often encompasses the attorney-client privilege and work product doctrine.

[2] Plaintiff produced a privilege log in excess of 1,000 pages listing approximately 11,000 documents. The Court has not read all of plaintiff's log. While at first blush it would seem plaintiff's privilege assertions are excessive, this is due to the fact plaintiff performed a prodigious investigation.

1

additional documents from these categories.³ As to the privilege assertions that are overruled, the Court directs plaintiff to review its privilege log to produce the documents in the same category as the documents the Court rules are not protected.⁴

Background

Since the parties are obviously familiar with the background of the case, a detailed summary will not be set forth. The Court incorporates by reference the discussion in its January 28, 2019 Oral Opinion denying and granting in part defendant's request for GPOS data. See Transcript at 3:25 to 11:10, Doc. No. 370. Plaintiff is the world's largest company dedicated to industrial automation. Plaintiff's products are sold to customers by its authorized distributors. Defendant also sells industrial automation products, including plaintiff's products, but is not an authorized distributor. Plaintiff contends defendant's sales of its products violates trademark and unfair competition laws. Defendant is pursuing an antitrust counterclaim. The stay in the

---

[3] Although it is possible not all documents in these categories are privileged, for the following reasons the Court declines to review additional documents in camera, nor will the Court address new requests for documents in these categories: (1) none of plaintiff's objections to the designated documents in these categories were sustained, (2) since defendants were prepared to go to trial in the ITC 1074 and 1105 proceedings without the alleged privileged documents, their importance here is questionable, and (3) defendant has already conducted extensive discovery. The effort to review defendant's challenges to all of plaintiff's 11,000 allegedly privileged documents is disproportional to the likely minimal importance of the documents.

[4] The Court respectfully declines to follow the September 18, 2019 decision of ALJ David P. Shaw which sustained all of plaintiff's privilege assertions in connection with ITC No. 1105. See Plaintiff's LB, Exhibit F. Judge Shaw did not review defendant's documents in camera.

case was recently lifted after the parties' International Trade Commission ("ITC") proceedings (1074 and 1105) were completed. For background purposes the Court adds that plaintiff's attorney-client privilege and work-product assertions are supported by the Declarations ("Decl.") of John Miller, Esquire, Vice President and Chief I.P. counsel, Kathleen Bentley, Director of Global Programs, Rodney Michael, Director Global Market Access, and Kathleen S. Donius, Esquire, Associate General Counsel.

Discussion

Defendant challenges plaintiff's assertion of the attorney-client privilege and work-product doctrine to protect from discovery plaintiff's documents. As to the general legal principals to apply, these are straightforward, largely non-controversial, and have been set forth in numerous Opinions of the Court. See, e.g., In re Riddell Concussion Reduction Litigation, C.A. No. 13-7585 (JBS/JS); 2016 WL 7108455 (D.N.J. Dec. 5, 2016); Nanticoke Lenni-Lenape Tribal Nation v. Porrino, C.A. No. 15-5645 (RMB/JS), 2017 WL 4155368 (D.N.J. Sept. 19, 2017); TD Bank, N.A. v. Hill, C.A. No. 12-7188 (RBK/JS), 2014 WL 12617548 (D.N.J. Aug. 20, 2014). Since the parties are already familiar with these general principles and in fact cite to the Court's Opinions, the Court will proceed to the crux of the parties' dispute.

Plaintiff argues most of the documents at issue are protected

by the work-product doctrine. A party seeking to invoke this doctrine must prove two elements. First, that a document was prepared for reasonably anticipated litigation. Second, that the document was prepared because of the prospect of litigation. Riddell, at *6.

After reviewing the entire record in detail, including the documents at issue in camera, the Court finds that plaintiff properly asserted the work-product doctrine for most of its documents.[5] The record reflects that in 2014 plaintiff commenced a targeted investigation of defendant and other potential "gray-market resellers" to prepare for litigation. See Miller Decl. ¶5; Bentley Decl. ¶5; Michael Decl. ¶7. Plaintiff focused its investigative efforts on the sale of its products through sources other than its authorized distributors.

Defendant argues plaintiff's investigation was done for a business purpose because plaintiff conducted gray-market investigations going back as far as 2004. However, even if true, this does not detract from the fact that starting in 2014 plaintiff's investigation specifically targeted defendant and others for litigation purposes. Further, given the declarants' specific averments about targeting defendant, the Court rejects

---

[5] The Court notes that plaintiff properly removed only the privileged pages from its Power Point documents. The remainder of the presentations were produced.

defendant's assertion that there was only a "remote possibility of litigation" and that plaintiff did not show an "identifiable specific claim of impending litigation."[6]

To repeat, the fact that defendant was specifically targeted for a litigation related investigation is supported by plaintiff's Declarations. Spurred by the fact that plaintiff learned a purported systems integrator, LEC, was supplying large amounts of its products to defendant, Miller attested (¶¶5-7) that "[i]n 2014, Rockwell Automation conducted a targeted investigation into Radwell's operation in the gray market for the specific purpose of preparing for litigation against Radwell…." The Court's in camera review corroborated Miller's statement. The Court does not credit defendant's argument that plaintiff's serialization effort was independent of plaintiff's investigation for anticipated litigation. Miller stated, "[t]he primary motivator for implementing serialization was to identify gray-market reseller targets for enforcement action, including potential litigation." Id. ¶16.

To the extent defendant argues plaintiff waived the work-product doctrine by sharing its documents with its employees and distributors, the argument is rejected. The waiver of the work-

---

[6] Since the trigger for plaintiff's work-product assertion occurred in mid-2014, plaintiff should review its privilege log to assess whether earlier documents should be produced.

product doctrine is different than the waiver of the attorney-client privilege. "The predicate of the waiver inquiry in the work-product context is not, as it is in the attorney-client context, whether the material was disclosed, but whether the material was disclosed to an adversary." Cooper Health System v. Virtua Health, Inc., 259 F.R.D. 208, 215 (D.N.J. 2009)(citation omitted). The essential question with respect to waiver of work-product is whether the material has been kept away from adversaries. Id. The party alleging that a waiver occurred has the burden of proof on the waiver issue. Id. Plaintiff's employees and distributors were not plaintiff's adversaries and therefore no waiver occurred. Further, since plaintiff shared a common interest with these individuals, this prevents a waiver of the work-product doctrine. In O'Boyle v. Borough of Longport, 218 N.J. 168, 186 (2014), the Court noted the protections offered by the attorney-client privilege and work-product doctrine are not waived by disclosure to a third party if the "person to whom disclosure of confidential attorney-client communications is necessary to advance the representation." Plaintiff's employees and distributors fit into this description.

The Court does not dispute the notion that many of plaintiff's documents reflect a joint legal and business purpose. However, the Court concludes the "dominant purpose" in preparing the

protected documents was the concern about objectively foreseeable and specifically identifiable litigation. Riddell, 2016 WL 7109455, at *7. Contrary to defendant's argument, the protected documents were not prepared as part of plaintiff's "ordinary course of business." This distinguishes the protected documents from at least two instances where the Court directed alleged privileged documents to be produced because they were prepared as part of a party's regular business. See, e.g., Robinson v. Winslow Twp., C.A. No. 11-530 (NLH/JS), 2012 WL 113643 (D.N.J. Jan. 13, 2012); Littlejohn v. Vivant Solar, C.A. No. 16-9446 (NLH/JS), 2018 WL 6705673 (D.N.J. Dec. 20, 2018).

Defendant argues the work-product doctrine does not apply because "Rockwell admits, its non-lawyer business people at all times controlled and executed the 'gray market' strategy." LB at 5. However, defendant ignores the fact Bentley states she worked closely with Miller in connection with her work. Bentley Decl. ¶8. She also stated she "worked in consultation with the legal department." Id. ¶4. Further, Miller states he directed the actions of Bentley. Miller Decl. ¶3. In addition, Bentley was promoted, "in large part to bolster the efforts to monitor the gray market so that Rockwell Automation could take legal action to enforce its rights." Id. ¶8; see also id. ¶10 ("Ms. Bentley's and Mr. Michael's investigative efforts were guided by near constant

direction from Rockwell Automation's legal department…"). The fact that not all of the protected documents were prepared by counsel is of no moment. A document may be protected even if it was prepared by an attorney's agent. <u>Riddell</u>, 2016 WL 7108455, at *7.

Defendant argues, "Rockwell has made no effort to explain how 'investigative documents' created and distributed among Rockwell business employees that almost never mention or involve attorneys were possibly created for pending or anticipated litigation." LB at 12. To the contrary, the averments in plaintiff's Declarations, cited <u>infra</u>, aptly demonstrate that the work of Bentley, Michael, etc. was done in anticipation of specifically identifiable objectively foreseeable litigation involving defendant. Also, that the documents were prepared under the direction of an attorney for the attorney's benefit to use in the anticipated litigation. As the Court has noted, "documents exchanged between [a party's] employees may be work-product even if they do not involve an attorney…. [D]ocuments are protected if their primary purpose was to assist counsel to render legal advice." <u>Littlejohn</u>, 2018 WL 6705673, at *2. This occurred here.

Although the Court finds that most of the documents designated by plaintiff are protected, five (5) documents are not protected. These documents are addressed in ¶23 of Miller's Declaration and

8

involve plaintiff's claim that its "training" documents are protected. Each of the non-protected documents will be separately addressed.[7]

Document No. 36 (RAI-ITC-5867-5886) is titled, "Channel Manager Scenarios Guide" with a notation "Confidential for Internal Purposes Only."[8] The document is described in paragraph 23 of Miller's Declaration as "a document full of hypothetical training scenarios created by counsel and designed to mitigate risks associated with daily business operations." Plaintiff argues Document 36 is protected because its legal team prepared the document to ensure compliance with the law and to mitigate "legal risk." See id.

As should be obvious, simply because an attorney prepared Document 36 does not automatically protect the document. "[T]he attorney-client privilege does not apply just because a statement was made by or to an attorney." Riddell, 2016 WL 7108455, at *3. Further, "[t]he mere involvement of an attorney does not, in itself, evidence that a document was prepared in anticipation of litigation." Id. at *7. As to the attorney-client privilege, the

---

[7] The Court rejects plaintiff's argument that it must accept the allegations in its Declarations that all of the documents at issue are privileged. Insofar as Miller's Declaration is concerned, the Court may disregard the parts of it that are conclusory with few details to support the claim. Gables Condominium and Club Association, Inc. v. Empire Indemnity Ins. Co., Case No. 18-23659, 2019 WL 1317824, at *6 (S.D. Fla. March 22, 2019) (collecting cases).

[8] At this time the Court takes no issue with plaintiff's confidentiality designation. In addition to the fact defendant did not challenge the designation, the Court is merely deciding whether Doc. No. 36 is privileged.

"privilege protects only those disclosures – necessary to obtain informed legal advice – which might not have been made absent the privilege." Westinghouse Electric Corp. v. Republic of the Philippines, 951 F.2d 1414, 1423-24 (3d Cir. 1991). The Court finds Document 36 does not convey any legal advice. Therefore, the Court overrules plaintiff's privilege assertion. Rather than relaying legal advice, Document 36 concerns the business training of plaintiff's Channel Managers. Business training materials are not protected simply because they were prepared by a lawyer. When Document 36 was prepared, plaintiff's attorneys were not acting in a legal role, but instead a business role. "An attorney who is not performing legal services or providing legal advice in some form does not qualify as a 'lawyer' for purposes of the [attorney-client] privilege." Payton v. New Jersey Turnpike Authority, 148 N.J. 524, 550-51 (1997); Fredericks v. Atlantic City Board of Education, C.A. No. 08-3082 (RBK/JS), 2010 WL 3429605, at *5 n.6 (D.N.J. Aug. 28, 2010).[9]

Time and time again the Court has written that it is difficult to apply the privilege analysis to in-house counsel because counsel sometimes acts in a dual business and legal role. Riddell, 2016

---

[9] Document 36 contrasts with a situation where an employee asks in-house counsel for legal advice on how to avoid legal liability regarding a specific factual scenario. Here, in contrast, Rockwell's attorneys provided training on how to mitigate risks. All training documents serve this purpose. The Court declines to rule that all training materials prepared by a lawyer are privileged because the materials give general advice on how to mitigate risks.

WL 7108455, at *4. To decide the privilege issue, the Court must determine if a document was primarily prepared for the purpose of rendering legal advice or assistance, rather than business advice. Id. at *5. Here, the Court rules Document 36 was primarily prepared for a business purpose. As such, the document is not privileged. Training materials that are not predominantly prepared for litigation and which do not convey legal advice are not protected. U.S. v. Louisiana, C.A. No. 11-470-JWD-RLB, 2015 WL 4619561, at *5 (M.D. La. July 31,2015); Bartram, LLC v. Landmark American Ins. Co, No. 1:10-cv-28-SPM-GRJ, 2011 WL 284448, at *2-3 (N.D. Fla. Jan. 24, 2011)(finding the requested "presentations and training programs" were not subject to the work product privilege because they were created for the purpose of providing advice about workers compensation and employment practices liability, and not for any reason or use connected to the pending litigation).

In addition to finding Document 36 is not protected by the attorney-client privilege, the Court also finds the document is not protected by the work-product doctrine. The Court does not find that the "dominant purpose" of Document 36 was a concern about specifically identifiable potential litigation. Riddell, 2016 WL 7108455, at *7 (in order to qualify as work-product, a party must show there existed an identifiable specific claim of impending litigation when the document was prepared). Indeed, Miller and

the other declarants do not even attempt to justify a work-product assertion for plaintiff's training documents.

Document 38 (Bates RAI-ITC-5732-5791) is a Power Point Presentation addressing "Appointing Distributors," "Terminating Distributors," "Distribution Contract and Policy Overview," "APR Support Policy," "Unauthorized Reseller Policy," "Competitive Products Policy," and "Ethics and Compliance." Having reviewed these pages in detail, the Court rules Document 38 is not protected for the same reasons Document 36 is not protected.

Document 52 (Bates RAI-ITC-61257-61270) is titled "Procedures for authorizing sales by authorized distributors through resellers." Paragraph 23 of Miller's Declaration indicates this is "an incomplete draft of a training manual expressly 'Prepared By' Caitlin Barrah, Rockwell's General Counsel for the Asia Pacific region." For the same reasons Documents 36 and 38 are not protected, this document is not protected.[10] Apart from the fact the topics discussed reflect business rather than legal concerns, the fact Document 38 is a business rather than a legal document is reinforced by the following statement on page one (Bates No. 61257): "[t]he purpose of this procedure is to define the

---

[10] This draft, as well as the final version of the document, is relevant and shall be produced. Draft documents are not off-limits to discovery if they contain relevant and non-privileged information. Cf. State National Ins. Co. v. County of Camden, C.A. No. 08-5128(NLH/AMD), 2011 WL 13079217, at *4 (D.N.J. April 28, 2011); Zawadsky v. Bankers Standard Ins. Co., C.A. No. 14-2293 (RBK/AMD), 2015 WL 10853517, at *7 (D.N.J. Dec. 30, 2015).

circumstances in which the company may permit an authorized distributor to use a reseller to perform a non-value added sale."

Document 53 (Bates RAI-ITC-72006-72007) concerns "gray market training for Rockwell's employees engaged in the RAAMP Program." Miller Decl. ¶23. For the same reasons documents 36, 38, and 52 are not protected, this document is not protected. This document merely describes the "benefits of purchasing from an authorized distributor." This is plainly a business document and not a legal document.

Document 55 (Bates RAI-ITC-98135-98148) is a Power Point presentation titled "'Gray Market' (Unauthorized Reseller) CSM AMP Training"). For the same reasons Documents 36, 38, 52 and 53 are not protected, Document 55 is not protected.

Conclusion

For all the foregoing reasons, the Court finds the fifty (50) documents defendant designated for in camera review are privileged except for Numbers 36, 38, 52, 53, and 55.

Accordingly, it is hereby ORDERED this 25th day of April, 2019, as follows:

1. As to the 50 documents designated for in camera review by defendant, plaintiff's privilege designations are SUSTAINED in part and DENIED in part.

2. All of plaintiff's privilege designations are SUSTAINED

13

except for Documents 36, 38, 52, 53 and 55.  Plaintiff's privilege assertions for these five documents are OVERRULED.  By May 9, 2019, plaintiff shall produce these documents to defendant as well as the final version of Document 52.

    3.    Plaintiff shall review its privilege log for all documents dated prior to mid-2014, to reassess its privilege assertions.  All non-privileged documents shall be produced by May 9, 2019.  If plaintiff has a good faith question about whether a document is privileged, plaintiff shall forward the documents to the Court for its in camera review by May 9, 2019.

    4.    Plaintiff shall review its privilege log for "training" documents that fit into the same category as those described in paragraph 23 of Miller's Declaration.  Plaintiff shall produce these documents to defendant by May 16, 2019.  If plaintiff has a good faith question about whether a document should be produced, plaintiff shall forward the document to the Court for its in camera review by May 16, 2019.

    5.    For the reasons stated in note 3, supra, apart from the documents identified in paragraphs 2-4 herein, plaintiff does not need to produce any additional documents from its privilege log to defendant.

    5.    Lead trial counsel for plaintiff whose appearance has been entered in the case shall submit a Declaration pursuant to 28

U.S.C. §1746, stating that to the best of his or her belief plaintiff has complied with the terms of this Order. The Declaration shall be served by May 16, 2019.[11]

                                                s/ Joel Schneider
                                                JOEL SCHNEIDER
                                                United States Magistrate Judge

Dated: April 25, 2019

---

[11] The Court is not keeping a copy of the documents reviewed in camera.