# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| Rockwell Automation, Inc. ) | |
| Plaintiffs, ) | Civil No. 15-05246 (RBK/JS) |
| v. ) | **Opinion** |
| ) | |
| Radwell International, Inc., ) | |
| Defendants. ) | |

**KUGLER**, United States District Court Judge

Before the Court in this action involving, among other things, trademark infringement, is the motion ["the motion"] of plaintiff Rockwell Automation ["Rockwell"] (ECF Doc. 314) under Federal Rule of Civil Procedure ["Fed. R. Civ. Proc." or "Rule"] 56(a) for summary judgment on Counts I[1], V[2] and VII-IX[3] of its second amended complaint (ECF Doc. 140) against defendant Radwell International, Inc. ["Radwell"],

**The COURT HAVING REVIEWED** the parties' submissions without a hearing as endorsed by Rule 78.1 (b), and for the reasons below, and for good cause shown,

**The Court DENIES** plaintiff's motion for summary judgment as to Counts I, V, and VII-IX of its second amended complaint.

An appropriate Order accompanies this Opinion.


## 1.0    Background and Procedure

What follows is an abridged version of the lengthy procedural history in this action-- with which the parties will be aware—that focuses on information relevant to this motion. Plaintiff Rockwell makes and sells a large number of products for a wide variety of uses in

---

[1] Trademark Infringement under 15 U.S.C. §1114
[2] Statutory Unfair Competition under N.J. Stat. Ann. §56:4-1 *et seq.*
[3] VII-Tortious Interference with Contract; VII-Aiding and Abetting with Tortious Interference with Contract; IX-Aiding and Abetting Fraud

industrial automations systems. Safety and reliability of these parts are of paramount importance not only to customers, but to Rockwell as a manufacturer to minimize quality problems and/or products liability claims. All of Rockwell's products bear one or more of its U.S. registered trademarks, which Rockwell asserts are source identifiers to its U.S. customers of its warranty, quality control measures, and customer support for each of its products sold in the U.S.

On 6 July 2015, Rockwell initiated this action against defendant Radwell. On 16 February 2016, it filed a first amended complaint and on 28 March 2017 a second amended complaint ["the complaint"], which is the one that controls here. The complaint has the following claims relevant to the motion: trademark infringement (Count I), statutory unfair competition (Count V), tortious inference with contract and aid and abetting thereof (Counts VII and VIII) and aiding and abetting fraud (Count IX).

Rockwell is suing Radwell because it alleges Radwell has been selling in the United States certain products bearing Rockwell trademarks but which are unauthorized and unlawful gray goods. Since Radwell is not an authorized dealer of Rockwell goods in the U.S., those goods Radwell has sold in the U.S. ["Radwell goods"] have entered and/or been sold in the U.S. without Rockwell's warranty, quality control and customer support. As unauthorized gray goods bearing Rockwell's trademarks, Radwell goods appear identical to U.S.-authorized Rockwell goods, but lack their quality benefits and Rockwell alleges are therefore inferior. Rockwell further alleges the Radwell goods confuse the public as to their source and quality and thereby infringe Rockwell's trademarks and are consequently unlawful.

Rockwell also alleges that, in order to get around that Radwell was not an authorized U.S. distributor of Rockwell goods, Radwell committed fraud by creating a purchasing network of third party agents that bought Rockwell goods from Rockwell authorized distributors and sold them to Radwell. Thus, the Rockwell distributors did not know they sold goods intended for Radwell. Radwell in turn re-sold the goods in the U.S. without authorization from Rockwell. Rockwell alleges Radwell deceived its authorized distributors to breach their distributorship agreements. Rockwell further alleges such deception constitutes fraud, tortious interference in the contractual relationships with its authorized distributors, and unfair competition under New Jersey law.

On 6 September 2017, Rockwell petitioned the International Trade Commission ["ITC"] to institute an investigation of several respondents including Radwell pursuant to 19 U.S.C.

§1337 ["the investigation" or "§337 investigation"][4],  In the ITC petition, Rockwell alleged the same claims as in the complaint before this Court.  On 10 October 2017, the ITC instituted an investigation into Rockwell claims, and, in response to Radwell's motion to stay this litigation, on 1 November 2017, the Court ordered the stay of all discovery in this action until the related ITC proceedings were concluded.

On 12 July 2018, Radwell voluntarily entered into a consent order stipulation with the ITC by which Radwell agreed it would stop selling, importing, and selling for import any goods bearing Rockwell marks.  This meant the investigation effectively ended as to Radwell.  On 20 July 2018, the ITC Administrative Law Judge ["ALJ"] issued an initial determination, which formally approved Radwell's consent stipulation, constituted a consent order and formally terminated the investigation as to Radwell.  On 15 August 2018, the Commission in full accepted Radwell's consent stipulation, and the consent order with the ITC became effective. Between institution of the investigation and its termination as to Radwell, Rockwell alleges extensive and expensive discovery had been conducted, which disrupted the parties' business and concluded with the preparation of complex, lengthy pre-hearing briefs, all of which efforts were rendered moot and irrelevant as to Radwell's prior activities because of the consent order.

On 22 February 2019, Rockwell filed this motion; the opposition and reply papers were later timely filed.

### 2.0    Parties Contentions

Rockwell argues the consent order that Radwell concluded with the ITC ["the consent order"]—by which Radwell agreed to stop selling, importing, or selling for import in or to the United States goods that infringed Rockwell's registered marks and by which the investigation as to Radwell's unlawful activities under §337 terminated—constitutes a final determination of the trademark infringement, tortious interference, and fraud claims before the ITC.  ECF Doc. 314-1:10. Rockwell also argues Third Circuit jurisprudence regarding the finality of consent orders applies to the Counts reviewed in this motion.  Thus, plaintiff argues in the Third Circuit, the ITC consent order must be regarded as a final determination against Radwell and necessarily and finally resolves Counts I, V, and VII of the second, amended complaint (ECF

[4] The goal of such investigations is to protect U.S. industry from harm by detecting and prohibiting the sale, the importation, or the sale-for-import of unlawful goods.

Doc. 140) because these are the very same claims examined in the investigation. *Id.* at 13. Accordingly, the ITC consent order precludes further legal determination of these Counts by this Court. *Id*. at 11-12.

Radwell argues the ITC consent order can never be considered final because of a plain language interpretation of the Federal Regulations governing ITC consent orders in §337 investigations. ECF Doc. 337:13-14. Moreover, the consent order as to Radwell was agreed to and executed by the ITC before the ALJ issued any fact finding or initial determination as to the Radwell. *Id.* at 20-22. Therefore, the consent order simply terminated the investigation before any legal or factual determinations were made. *Id.* Thus, the consent order cannot logically confer claim preclusion as to any of the Counts in the complaint as there is no legal finding that can preclude them. *Id.* at 15.

## 3.0    STANDARDS

### 3.1    Summary Judgment Generally

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P.* 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.*

The movant bears the initial burden of proof to present those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).   If the movant makes this showing, the burden shifts to the non-moving party to offer evidence establishing the existence of a genuine dispute that compels a trial. *Id.* at 324. Specifically, the non-movant "must set forth specific facts showing that there is a genuine issue for trial" (*Fed. R. Civ. P.* 56(e); *Celotex*, 477 U.S. at 324) through affidavits or otherwise as provided by Rule 56 and must "identify those facts of record which would contradict the facts identified by the movant." *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.,* 311 F.3d 226, 233 (3d Cir. 2002).  If the non-movant fails to do so, the Court must grant summary judgment. *Big Apple BMW v. BMW of North America,* 974

F.2d 1358, 1363 (3d Cir.1992). The evidence introduced to defeat or support a motion for summary judgment must be capable of being admissible at trial. *Callahan v. AEV, Inc.*, 182 F.3d 237, 252 n. 11 (3d Cir.1999) (*citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1234 n. 9 (3d Cir.1993)).

In evaluating whether there is a genuine dispute of material fact, the Court considers all facts and ambiguities in the light most favorable to the non-moving party (*Anderson v. Liberty Lobby*, 477 U.S. 242, 255; *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir.2013)) and also draws all reasonable inferences in their favor. (*Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 170 3d Cir.2011)). However, the Court determines not "the truth of the matter," but whether a genuine dispute of material fact necessitates a trial. *Anderson*, 477 U.S. at 242; *Petruzzi's IGA Supermarkets*, 998 F.2d at 1230. The Court therefore neither weighs the evidence nor makes credibility determinations as these are tasks for the fact finder. *Petruzzi's IGA Supermarkets*, 998 F.2d at 1230.

A fact is material only if it can "affect the outcome of the suit under governing law" (*Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006)). A material fact raises a genuine dispute "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party. *Healy v. N.Y. Life Ins. Co.*, 860 F.2d 1209, 1219 n. 3 (3d Cir.1988). Speculation, conclusory allegations, suspicions, or mere denials do not suffice to raise a genuine dispute of material fact. *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 288-289 (3d Cir. 2018). Nor does reliance on the pleadings suffice, rather the non-moving party "must present affirmative evidence ... from which a jury might return a verdict in his favor." *Anderson*, 477 U.S. at 256.

When contradictory, material facts are presented, a genuine dispute is raised and undercuts a decision for summary judgment. However, even with a presentation of contradictory facts, there can be no genuine dispute when one party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. When the movant has completely failed to show an essential element of its case, all other facts are immaterial. *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir.1992).

### 3.2    Initial Determinations of the International Trade Commission

Section 332 together with Section 337 of the Tariff Act of 1930 authorizes the International Trade Commission ["ITC"] to perform investigations into the unlawful importation,

sale, or sale for importation into the United States of articles that infringe a valid, enforceable U.S. registered trademark. *19 U.S.C. §1332 and §1337(a)(1)(C)*. ITC investigations under §337 aim to prevent, investigate and redress unfair practices in import trade. *19 U.S.C. §1337*. §337 investigations provide a venue other than the federal courts for trademark owners seeking to redress trademark infringement and unfair competition. Michael A. Ritscher *et al.*, *The Status of Dual Path Litigation in the ITC and the Courts: Issues of Jurisdiction, Res Judicata and Appellate Review*, 18 AIPLA Q.J. 155, 163 and 180−184 (1990) [*arguing* that ITC determinations may serve as full and fair opportunities to litigate unfair trade actions and that litigants receive their full due process rights in ITC proceedings]; Joseph H. Heckendorn *et al.*, *Gray Market Trademark Infringement Actions at the U.S. International Trade Commission: The Benefits of the Forum and Analysis of Relevant Cases*, 8 J. MARSHAL REV. INTELL. PROP. L. 271, 273 & 277-278 (2009) [*stating* the lower cost of an ITC proceeding compared to those of federal court actions is perhaps the greatest benefit of ITC initial determinations in trademark cases].

Since the ITC is not an Article III court but a quasi-adjudicative administrative agency, the ITC follows its own procedural rules, codified in the Federal Regulations ["CFR" or "Regulations"] largely at 19 C.F.R.§201.16 and part 210. These Regulations govern the ITC's processing of §337 initial determinations, which are managed, conducted, and decided by a Commission's Administrative Law Judge ["ALJ"]. *19 C.F.R. §210.42*. An initial determination by the ALJ shall include his/her "opinion stating findings and conclusions (with specific page references to principal supporting items of evidence in the record) and the reasons or bases therefor necessary for the dispositions of all material issues of fact, law, or discretion presented in the record…" *Id. at §210.42 (2) (d)*. If the ALJ's initial §337 determination is not appealed within 60 days, it becomes the Commission's final determination as to unfair practices in import trade. *Id.* at *§210.42 (2) (h) (2)*. In a final determination, the ITC is authorized to grant the following remedies: limited exclusion orders of importing and selling (against parties); temporary limited exclusion orders (during the investigation); cease and desist orders; and temporary cease and desist orders. *19 U.S.C. 1337(d) – (g)*.

Neither statute nor Regulations authorize damages as an ITC remedy. Because of that limitation in redress, a §337 investigation and a federal court action based on infringement and/or other claims may proceed as alternative actions. Typically, when that occurs, a party may request the court action be stayed until either the ALJ has reached an initial determination or the ITC investigation has been terminated. Covington & Burling, *Outline of a Section 337 Case,*

SECTION 337 PRACTICE, 10-15 (2015), last found on 10 September 2019 at
https://www.cov.com/files/FirmService/57264b42-5957-4794-a4bb-
bef3b7838748/Presentation/ceFirmServiceBrochure/ITC_Section_337_Brochure.pdf

### 3.3 Termination of an ITC investigation through an ITC Consent Order

At any time prior to the ALJ's initial determination, a party may move to terminate the investigation as to any or all respondents.  The basis for termination may be withdrawal of the complaint; an agreement, such as a settlement or arbitration agreement or a license; or a consent order.  *19 C.F.R. §210.21 (a) - (c).*

The Regulations governing termination by consent order are specific and detailed.  *Id. at §210.21 (c) (1) – (3).*  A party may request termination of a §337 investigation at any time during its pendency[5] by submitting to the ALJ a consent order stipulation, which incorporates a proposed consent order.  *Id. at §210.21 (c) (1) (ii).*  That is, the consent order stipulation functions in a similar manner as a motion to terminate the investigation; the proposed consent order serves as the template for deciding the motion.  *Id.* The Regulations make clear the consent order stipulation is the mechanism by which the ALJ reviews, agrees to, and executes a consent order.  *Id.* at §210.21 (c) (3).  As such, the consent order stipulation is not an accompanying document separate and exclusive of the consent order, but is rolled into and forms the basis of the consent order upon the ALJ's decision to grant it.  *See §210.21(c) (1) (ii)* [stating "a proposal to terminate by consent order shall be submitted **as a motion** to the administrative law judge **with a stipulation that incorporates a proposed consent order** (emphasis added)].

### 4.0 DISCUSSION

### 4.1 ITC Regulations and Preclusive Effect of an ITC Order

To be resolved here is whether the ITC consent order issued as to Radwell is a final determination that directs claim preclusion as to Counts I, V and VII-IX of the complaint.  The parties do not dispute that:  plaintiff initiated a §337 investigation before the ITC against Radwell and other parties; the §337 investigation resulted in extensive discovery; before the ITC's initial determination, Radwell filed a motion to terminate the investigation as to itself based on a consent order; and the ITC issued a consent order before reaching an initial determination as to the possibility of Radwell's unlawful actions under §337.  Thus, material

---

[5] or even before institution of the investigation.  *Id. at §210.21 (c) (1) (i).*

facts are not disputed here. What the parties do dispute is the law, namely, the preclusive effect of the ITC's consent order on Counts I, V, and VII-IX of the complaint. In other words, the parties dispute the legal, determinative effect of the ITC consent order in this Court's resolution of the motion.

Although Rockwell implies an ITC consent order is subject to Third Circuit jurisprudence regarding the finality of consent orders in §337 investigations (ECF Doc. 314-1: 11-12), that argument is not correct. It is the Federal Circuit's jurisprudence that determines whether issue or claim preclusion applies to an ITC adjudication in a §337 investigation. *19 U.S.C. §1337(c)*; 18 U.S.C. §1295(a)(6) [*stating* the Federal Circuit has exclusive jurisdiction to review final determinations of the ITC]. *See, Swagway, LLC. v. International Trade Commission*, 2019 WL 3812042, No. 2018-1672 (Fed. Cir. 14 Aug 2019) [in a §337 investigation regarding trademark infringement, the Federal Circuit vacating its opinion at 923 F.3d 1349 to determine that ITC error in denying motion for a consent order was harmless even though granting the consent order <u>could</u> have had an adverse preclusive effect in a pending trademark litigation]. *See* also, DBN *Holding, Inc. v. International Trade Commission*, 755 Fed.Appx. 993, 998 (Fed. Cir. 2018) [the Federal Circuit determining the correctness of an ITC holding regarding the *res judicata* effect of the ITC's decision in a §337 proceeding, that is, this is a meta-decision on the ITC's decision of the *res judicata* effect of an ITC order]; *San Huan New Materials High Tech, Inc. v. International Trade Commission*, 161 F.3d 1347, 1354-1355 (Fed. Cir. 1998) [the Federal Circuit affirming the ITC's authority to treat its own consent orders, when violated, as final **for the limited purpose** of pursuing the imposition of civil penalties and the initiation of a civil action in federal district court, and thereby precluding the need to retry issues **relating to the imposition of the consent order**]. Put simply, since the finality of an ITC consent order is at issue, the Third Circuit's jurisprudence regarding consent orders has no bearing. The statutes and Regulations relating to such ITC consent orders govern here and the it is the Federal Circuit that reviews the legality of final ITC determinations.

Having set forth proper appellate jurisdiction of ITC consent orders in §337 investigations, the Court reviews the plain language of the Regulations governing consent orders as an adjudicative ruling. The language of *19 C.F.R. §20.21 (c)-Termination by entry of consent order-*is transparent: "[t]ermination [of a §337 investigation] **need not** constitute a determination as to violation of section 337" [emphasis added]. The Regulations do not state when a consent order does or not constitute such a determination of a §337 violation. Contrary

to defendant's argument that consent orders can never constitute such a determination (ECF Doc. 337:14) and contrary to plaintiff's implication that consent orders always do (ECF Doc. 314-1:11-13), the Court looks to the Federal Circuit's jurisprudence for clues as to when and how a consent order may give preclusive effect.

### 4.2 Federal Circuit Jurisprudence Regarding Preclusive Effect of an ITC Order

In *San Huan New Material High Tech, Inc. v. International Trade Commission*, 161 F.3d 1347 , 1354-1356 (Fed.Cir. 1998), the Federal Circuit reviewed whether a civil action could be initiated in U.S. district court to enforce a consent order that had terminated a §337 investigation.[6]  The *San Huan* Court cited a Senate Report from 1987[7] that stated:

> "[The proposed legislation amends] section 337(b)(1) to authorize the Commission to terminate investigations, in whole or in part, by issuing consent orders or on the basis of settlement agreements . . .
>
> The amendment provides express authority for such terminations.  It is intended to put to rest any doubts regarding the Commission's authority to terminate investigations by issuance of consent orders or on the basis of settlement agreements without making a determination regarding violation of the statute."
>
> *Id*. at 1355 *citing* S. Rep. No. 100-71 at 130 (1987).

Even though the Federal Circuit in *San Huan* did not address the issue of the preclusive effect of a consent order, the Court did note that, in issuing the consent order with plaintiff San Huan, the Commission "made no determination of violation in the original investigation."  *Id.* at 1356.  *San Huan* shows the Federal Circuit recognized that a consent order could be issued when the Commission had made no finding of fact or law.  To the point, the Federal Circuit did not find the *San Huan* consent order itself claim preclusive of a §337 violation, but clearly enforceable by civil penalty because the party had agreed to it.  *Id.*   In effect, the *San Huan* Court did recognize a possible attempt to "game the system" via a consent order before initial determination. San Huan, which had agreed to the consent order, could not renege on it just

---

[6]  In 1981, the International Trade Commission had amended its Regulations to allow termination of §337 investigations by consent order.

[7] In 1998, Congress enacted the Omnibus Trade and Competitiveness Act ["OTCA"], Pub. L. No. 100-418 (1988), which amended the statute, 19 U.S.C.§1337, by providing express statutory basis in §337 (c) for the previously long-standing Commission Regulations practice of issuing and enforcing consent orders.   To be clear, ITC Regulations in effect before, during and after enactment of the OTCA had always provided consent orders could be enforced by civil penalties.

because there was no ITC determination.  San Huan had to comply with it or be subject to civil penalty.  *Id.*

More recently, the Federal Circuit in *Swagway, LLC v International Trade Commission*, Civ. No. 2018-1672, 2019 WL 3812042, ___ F.3d ___ (Fed. Cir. 2019) ["*Swagway II*"] [*vacating* its Opinion in 923 F.3d 1349 (Fed. Cir. 2019) ["*Swagway I*"], considered whether the formal deficiency in the manner by which the ITC denied the competitor's consent order was harmful error.  In the Swagway cases, the ALJ had issued a Final Initial Determination, finding, among other things, that Swagway's designations did indeed infringe plaintiff Segway's registered marks.  *Swagway II*, at *2.  *Swagway II* also vacated its *Swagway I*  holding that a finding of trademark infringement in a §337 determination did NOT HAVE preclusive effect. *Id*. at *1.

Like *San Huan*, *Swagway II* did not involve the preclusive effect of consent orders in later adjudicative determinations of the same legal claims.  So neither *Swagway II* or *San Huan* directly resolves the parties' arguments in this motion.  Indeed, there is no Federal Circuit precedent on point to the issue here. Nonetheless, like *San Huan*, *Swagway II* informs indirectly on the preclusive effect of consent orders in §337 determinations of trademark infringement because of the Federal Circuit's clear abstention from deciding such effect.

Swagway and plaintiff Segway had presented to the ALJ several (and competing) versions of a consent order stipulation prior to the hearing on infringement. Swagway sought a ruling on its proposed stipulation before the hearing; but, owing to the confusing number of versions, the ALJ indicated no consent order ruling would take place before the infringement hearing.  After the hearing, the ALJ issued an initial determination of trademark infringement relying on a certain weighting of the 6 *DuPont* factors, which showed Swagway designations created a likelihood of confusion with the Segway marks.  *Swagway II*, at *3The ALJ further stated in a footnote of the initial determination that "[a]ny pending motion that has not been adjudicated is denied, unless otherwise noted".  *Id*.  Swagway petitioned a review of both the trademark infringement determination and of the "informal" denial of its consent order.[8] *Id*. at *3.

The Federal Circuit affirmed the manner in which the Commission applied the *DuPont* factors and weighed them in finding trademark infringement.  *Id*. at *4-6.  It also held the manner in which the ALJ denied Swagway's consent order stipulation—in a footnote without

---

[8] The ITC Regulations require that an ALJ's denial of a consent order must be in the form of an order. *19 C.F.R. §210.42 (c)*. However, the ALJ had summarily dismissed the consent stipulation in a footnote

explanation—did not prejudice Swagway and was harmless error under the Administrative Procedure Act. *Id.* at *9. The Court's rationale for the latter holding is based partly on Swagway's procedural failure to request the ALJ to stay the infringement hearing until the consent order confusion had been resolved. *Id.* at *8.

These holdings notwithstanding, the *Swagway II* Court's unexplained **annulment** of its *Swagway I* holding—trademark §337 determinations have no preclusive effect—illumines the Federal Circuit's direction as to the preclusive effect of non-patent determinations, and by, extension, ITC consent orders. In *Swagway I*, the Federal Circuit held definitively that §337 determinations of trademark infringement do **not** have preclusive effect. Because of that holding, the *Swagway I* Court declined to reach Swagway's procedural arguments regarding its consent order motion. *Swagway I*, 923 F.3d at 1357.

Segway, the trademark owner, petitioned the Federal Circuit to reconsider the no-preclusive-effect holding. However, instead of reversing, the *Swagway II* Court **vacated**[9] with no explanation.

This Court sees the Federal Circuit intends to leave decisions about the preclusive effect of non-patent ITC determinations, and in particular, trademark infringement determinations, up to the district courts. It may be that the Federal Circuit sees district courts as more directly able to apply the ITC's calculus of trademark infringement factors and weight them. By extension, it may be that the Federal Circuit sees district courts as more directly able to determine the claim preclusive effect of an ITC consent order.

### 4.3    Deciding Factor

The deciding factor here is whether an ITC consent order—not just any consent order—has been executed BEFORE OR AFTER the ITC has made a determination under §337 of harm to U.S. industry. Being charged with protecting U.S. industry from unlawful harm, the ITC aims to determine such harm and end it. Its main goal is not the determination of infringement of an IP right, which could have preclusive effect of the same claims in a later adjudication. The ITC has other means to end harm to U.S. industry, which may or not be

---

[9] The *Swagway I* holding actually created a split in the Circuits regarding the preclusive effect of ITC determination in non-patent matters. Three Circuit Courts--the First (*Aunyx Corp. v. Canon U.S.A., Inc.*, 978 F.2d 3, 7-8 (1st Cir. 1982) [anti-trust action]); the Second (*Union Manufacturing Co. v. Han Baek Trading Co.*, 763 F.2d 42, 45-56 (2d Cir. 1985) [trademark infringement determination]), and the Fourth (*Baltimore Luggage Co. v. Samsonite Corp.*, 977 F.2d 571 (Table) at *3 (4th Cir. 1992) [trademark infringement determination])—have already held that ITC determinations in non-patent matters can have claim preclusive effect in later adjudicative proceedings.

preclusive in later proceedings. Put differently, the deciding factor depends on when the ITC has issued a finding that can impart final resolution to identical claims in another proceeding, that may have a different legal goal, such as determining infringement.

Here, the indisputable fact is that the ITC consent order was issued as an Initial Determination BEFORE a hearing on trademark infringement and other claims. *See In the Matter of Certain Industrial Automation Systems and Components Thereof Including Control Systems, Controllers, Visualization Hardware, Motion Control Systems, Networking Equipment, Safety Devices, and Power Supplies*, USITC Inv. No. 337-TA-1074 (U.S. Intern. Trade Com'n), USITC Order No. 42, 2018 WL 3599544 [Initial Determination Terminating Respondent Radwell International, Inc. by Entry of Consent Order; Suspending Procedural Schedule].

Although there was extensive discovery provided to the ITC, including volumes of documents and many depositions, the ITC executed a consent order with Radwell that did nothing more than end the investigation as to Radwell. There was no hearing at which the ITC could have made a final conclusion, a procedural or evidentiary finding, or even a preliminary conclusion, and there is not written record pointing to any such finding or conclusion.

Rockwell implies that bearing a heavy burden of discovery and pre-hearing briefings as well as expense and business disruption is inequitable when an ITC investigation ends abruptly, to some extent unilaterally, without an unambiguous decision of unlawful behavior that can preclude any later proceeding on the same claims. Such great effort and expense not only appears futile but worse must be to some extent duplicated in a later proceeding.

Having considered this burden as an implicit argument of Rockwell's, the Court nonetheless, holds that, there must be, in the record of an ITC investigation, some finding by the ALJ that is necessarily **final** and identifies unlawful behavior harming U.S. industry by the party to a consent order BEFORE the ALJ issues the consent order. Otherwise, the consent order, unaccompanied by such a finding, can have no preclusive effect in a later adjudicative proceeding resolving the same claims. Simply, without an ALJ **final** finding, nothing can be precluded.

The Court renders no opinion here as to whether a consent order issued in an Initial Determination AFTER the ITC had held a hearing would qualify as having preclusive effect. Nor does the Court render an opinion as to whether a party's express, on the record admission of tortious or infringing activity BEFORE an ITC's issuance a consent order would so qualify. Those opinions await other relevant motions in other district courts or the Federal Circuit.

For the reasons discussed above, the motion for summary judgment is DENIED.

Dated: 25 September 2019

s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Court Judge